# COURT OF APPEALS
## DECISION
## DATED AND FILED

## September 1, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1592**

**STATE OF WISCONSIN**

Cir. Ct. No. **2016CV358**

**IN COURT OF APPEALS**
**DISTRICT IV**

TOWN OF SARATOGA,

   PLAINTIFF-RESPONDENT,

 V.

ARNOLD L. STRANGFELD AND PATRICIA H. STRANGFELD,

   DEFENDANTS-APPELLANTS,

SPRINGCASTLE AMERICAN FUNDING TRUST,
ARROW FINANCIAL SERVICES LLC,
GREEN TREE SERVICING LLC, CAPITAL ONE BANK
AND CREDITONE LLC,

   INTERESTED PERSONS.

         APPEAL from an order of the circuit court for Wood County: GREGORY J. POTTER, Judge. *Affirmed*.

         Before Blanchard, P.J., Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Arnold and Patricia Strangfeld appeal an order of the circuit court appointing a receiver under WIS. STAT. § 823.23 (2019-20).[1]  The court appointed the receiver to abate what the court concluded were conditions on the Strangfelds' property that constituted a public nuisance, based on allegations by the Town of Saratoga that the property violated a Town ordinance.  The Town ordinance provides that all "fail[ures] to keep" property in the Town "free of litter, debris, trash, or rubbish" create public nuisances that "offend the comfort, health, repose or safety of the Town."  *See* TOWN OF SARATOGA, WIS., ORDINANCES No. 12-2-15A, § 2(D) (Dec. 2, 2015).[2]

¶2      As a threshold issue, the Town argues that this court lacks jurisdiction to decide the issues raised by the Strangfelds because they did not timely appeal an earlier circuit court order that the Town contends was a final order for purposes of determining this court's appellate jurisdiction.  We conclude that this court has jurisdiction over the issues raised by the Strangfelds.

¶3      On the merits, the Strangfelds specifically argue that the circuit court erred in concluding that (1) the Town provided sufficient notice under WIS. STAT. § 823.23 before applying for a receiver, (2) there was sufficient evidence to determine that conditions on the Strangfelds' property constituted a public

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] All references to the Town of Saratoga's Ordinances are to the version dated December 2, 2015, unless otherwise noted.

nuisance, and (3) the Town's claims failed under WIS. STAT. § 823.08, which places limitations on nuisance actions brought against agricultural uses of properties. The Town fails to adequately brief any of the merits issues. We nonetheless reject each of the Strangfelds arguments as undeveloped in one way or another, because they consistently fail to identify any basis for reversal and we cannot abandon our neutral role to develop their contentions. Accordingly, we affirm.[3]

## BACKGROUND

¶4      Since 1967 the Strangfelds have owned land in the Town on which they reside. They also put the land to agricultural use, specifically raising animals. Before the events underlying this appeal, in the 1990's, the Town issued citations for public nuisance ordinance violations against the Strangfelds and pursued a complaint under statutory public nuisance law contained in then WIS. STAT ch. 823, which resulted in a settlement and dismissal. The Town issued more recent citations to the Strangfelds in 2007, 2008, and 2015.

¶5      A Town board member eventually testified that in 2016 she noticed that various items appeared to have been recently moved onto the Strangfelds' front yard and "arranged" in what she described as a "haphazard" manner. This led the Town to commence this action seeking the appointment of a receiver to abate an alleged public nuisance. However, before doing so the Town served the Strangfelds in July 2016 with a notice of an intent to request appointment of a

---

[3] We observe that neither party suggests to this court that any issue in this appeal may be moot as a result of changed circumstances, actions or inactions of a receiver, or for any other reason. Therefore, we have no occasion to address potential mootness.

receiver, as is required by statute.[4]  *See* WIS. STAT. § 823.23(2)(b).  The notice stated that the Strangfelds' property had "been in an ongoing state of noncompliance" with the Town's ordinance 12-2-15A, § 2(D) and its "predecessor ordinance."  The notice did not provide any details regarding alleged violations of the ordinance or its predecessor—it merely provided the ordinance number.  We relate additional details about the notice in the Discussion section below.

¶6      The Town filed its petition for a receiver in October 2016.  As its sole demand for relief, the Town sought "the appointment of a receiver pursuant to the terms of [WIS. STAT.] § 823.23 to take control of the [Strangfelds]' real estate and abate the ongoing nuisance."

¶7      The Strangfelds moved to dismiss the petition in January 2018.  They argued that the Town's notice was insufficient because it did not adequately set forth the conditions that the Town alleged constituted public nuisances or, to the extent that it might have, identified only conditions that did not constitute public nuisances.  Related to this alternative argument, the Strangfelds contended that the Town's action sought the abatement of conditions that were incidental to, and therefore protected as, agricultural uses of the property under WIS. STAT. § 823.08.  The circuit court denied the motion in an oral ruling in December 2018.[5]

---

[4] WISCONSIN STAT. § 823.23(2)(b) provides in pertinent part that "[a]t least 60 days before filing an application for the appointment of a receiver" the applying municipality "shall give written notice … to all owners … of the intent to file the application …."

[5] After the parties conducted discovery that included depositions, the Strangfelds moved for summary judgment dismissing the action.  Although the motion made frequent reference to deposition testimony, it was at least in part a reassertion of the Strangfelds' position that the Town had failed to provide adequate notice or identify conditions on their property that qualified

(continued)

¶8    A trial commenced in October 2019, was suspended for a time, then resumed in July 2020.[6] The circuit court made an oral ruling in November 2020 and followed that with a December 2020 order entitled "Findings and Judgment," which incorporated findings and conclusions made in the oral ruling.

¶9    We describe the December 2020 order in more detail below. It is sufficient for background purposes to note that the circuit court reached the substantive conclusion that "the Town has met [its] burden of proof[] that there is clear, satisfactory and convincing evidence that the defendants are in violation of the Town['s] public nuisance ordinance." The court's written order added instructions that included the possibility of the Town "being able to apply … for a Receiver" in later proceedings.

¶10    The Town brought a motion for contempt in July 2021, which was accompanied by an affidavit averring that the Strangfelds, through their attorney, had refused to grant Town personnel access to their property, in violation of the December 2020 order. The circuit court issued a written order appointing a receiver for the property in September 2021, but the court held in abeyance the motion for contempt. The Strangfelds appeal.

---

as public nuisances. The circuit court denied the motion, in part based on its earlier ruling having already addressed the issue of notice.

[6] The suspension occurred when the parties reached a tentative settlement. The court ordered that "[i]f there are certain items depicted [in trial exhibit photos of the property] that the parties cannot agree should be removed, the court will require that each party state in writing their justification for either the item being in violation of [the] nuisance ordinance or being in compliance." However, this order did not suffice to cause the tentative settlement to stick, and the trial resumed.

5

**DISCUSSION**

¶11 We begin with the pertinent standards of review. Then we address the issue of the finality of the circuit court's December 2020 order as it relates to this court's jurisdiction to address the merits in this appeal. Because we conclude that we have jurisdiction over the merits issues, we address the merits, explaining why we reject the Strangfelds' arguments based on our conclusion that they are undeveloped.

¶12 We determine independently whether an order is final for purposes of resolving issues regarding our appellate jurisdiction. *See Admiral Ins. Co. v. Paper Converting Mach. Co.*, 2012 WI 30, ¶22, 339 Wis. 2d 291, 811 N.W.2d 351. To the extent our analysis involves interpreting and applying statutes such as WIS. STAT. §§ 823.08 and 823.23, we do so de novo. *See Meyers v. Bayer AG, Bayer Corp.*, 2007 WI 99, ¶22, 303 Wis. 2d 295, 735 N.W.2d 448. In reviewing the circuit court's findings of fact, we will not set its findings aside unless they are "clearly erroneous." *See A & A Enters. v. City of Milwaukee*, 2008 WI App 43, ¶17, 308 Wis. 2d 479, 747 N.W.2d 751 (citing WIS. STAT. § 805.17(2)).

**I. Scope Of Appellate Jurisdiction**

¶13 The Town briefly asserts that this court does not have jurisdiction to address the merits of the issues now raised by the Strangfelds in their appeal of the circuit court's September 2021 order appointing the receiver. The Town asserts that the Strangfelds failed to timely appeal the earlier December 2020 order, which the Town contends was a final order disposing of the merits. *See* WIS. STAT. § 808.03(1)-(2) (in general only final judgments or orders "may be appealed as a matter of right"); WIS. STAT. RULE 809.10(1)(e) (court of appeals loses jurisdiction over untimely appeals).

¶14     The Strangfelds argue that the circuit court's more recent September 2021 order appointing the receiver was the first final order to be issued in the case, meaning that their appeal of the September 2021 order brings before this court challenges to prior circuit court rulings, including the November 2020 order. *See* WIS. STAT. RULE 809.10(4) ("An appeal from a final judgment or final order brings before the court all prior nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon.").

¶15     We conclude that the December 2020 order was not a final order under precedent of our supreme court.

¶16     "A final judgment or final order is a judgment, order or disposition that disposes of the entire matter in litigation as to one or more of the parties, whether rendered in an action or special proceeding." WIS. STAT. § 808.03(1). "To constitute a final order or judgment, the document must explicitly dismiss or adjudge the entire matter in litigation as to one or more parties." *Admiral*, 339 Wis. 2d 291, ¶27. "'Deciding' a case in the sense of merely analyzing legal issues and resolving questions of law does not dispose of an entire matter in litigation as to one or more parties." *Wambolt v. West Bend Mut. Ins. Co.*, 2007 WI 35, ¶34, 299 Wis. 2d 723, 728 N.W.2d 670.

¶17     We now summarize additional background related to the December 2020 order entitled "Findings and Judgment" and incorporated findings. The circuit court's findings were not specific in addressing any particular items or conditions on the Strangfeld property. Instead, by way of example, the court made the general finding that, dating back to the mid-1990's, the property was used for some agricultural uses, specifically "husbandry," which we understand to be the

7

care and breeding of animals. As noted, the court concluded that the Town had met its burden to prove that the Strangfelds were then in violation of the Town's "public nuisance ordinance."

¶18 The December 2020 order added the following as directions to the parties:

> Representatives of the Town of Saratoga will have the opportunity to enter the Strangfeld property and identify everything that they feel constitutes a nuisance, excluding anything related to agricultural use and vehicles. Said inspection will take place no later than December 7, 2020. The Town will then notify [the Strangfelds] of those items remaining on the property that [the Town] consider[s] to be non-compliant. [The Strangfelds] will have until April 30, 2021 to remove or store inside an enclosed structure, any of the items detailed by the Town of Saratoga. Failure to do so will result in the Town being able to apply to the Court for a Receiver to bring the property into compliance.

¶19 Applying pertinent legal principles to the December 2020 order, we cannot say that it explicitly adjudges the entire matter of the Town's petition. To repeat, that petition specifically and exclusively sought as relief the appointment of a receiver under WIS. STAT. § 823.23 to abate an alleged nuisance. Viewed in light of that statute's requirements, the December 2020 order at most "decided" the case in that it "merely analyz[ed]" the legal predicates to the appointment of a receiver but without actually doing so, and arguably only some of the necessary predicates. *See **Wambolt**,* 299 Wis. 2d 723, ¶¶7, 33-35 (memorandum decision that granted defendant's motion for summary judgment and stated that plaintiffs "'have no viable claim'" did "not constitute an 'unequivocal order to dismiss all of the claims'" because the order did not "actually dispose of the case by dismissing or adjudging it" (quoted source omitted)).

¶20     To explain further, WIS. STAT. § 823.23(2)(g) requires the circuit court to make the following determinations in deciding whether to appoint a receiver:  (1) whether any interested party attempted to abate the alleged nuisance before the appointment of a receiver (under para. (2)(f)) or, if so, whether the attempt was unsuccessful; (2) whether the property "is a [public] nuisance"; (3) the extent of the abatement necessary and the scope of the work needed to eliminate the conditions comprising the nuisance; and (4) the identity of the person appointed as receiver to complete the abatement.[7]  *See* § 823.23(2)(a) (limiting in pertinent part a municipality's authorization to pursue a receiver to "nuisance[s] under this chapter"); WIS. STAT. § 823.01 (granting municipalities jurisdiction to maintain actions to abate "*public* nuisance[s]" (emphasis added)).  The December 2020 order could be understood to have made a "decision" as to three of these requirements, but ultimately did not decide the fourth—the appointment of the receiver—and by extension did not "dispose" of the entire matter.  *See Wambolt*, 299 Wis. 2d 723, ¶36.

---

[7] It does not appear from the record that the parties pursued, or that the circuit court understood that they intended to follow, the procedure described in WIS. STAT. § 823.23(2)(f), under which an alleged public nuisance is abated without the appointment of receiver:

> If, following the application for appointment of a receiver, one or more of the interested parties elects to abate the nuisance, the party or parties shall be required to post security in such an amount and character as the court considers appropriate to ensure timely performance of all work necessary to abate the nuisance, as well as satisfy such other conditions as the court considers appropriate for timely completion of the abatement.

Sec. 823.23(2)(f).  Here, the court suspended the trial addressing the alleged existence of a public nuisance to allow the parties to pursue a stipulated process for addressing the alleged nuisance, but no party was required to post a security.  Moreover, even if the circuit court and the parties intended to attempt to follow this procedure, by the time trial was renewed the proceedings more clearly followed the procedure in § 823.23(2)(g), as discussed in the text.

¶21 Moreover, to the extent there is any ambiguity as to the finality of the December 2020 order, ambiguity in the language of an order regarding its finality is to be construed in favor of "preserv[ing] the right of appeal." *See Admiral*, 339 Wis. 2d 291, ¶27; *see also Wambolt*, 299 Wis. 2d 723, ¶46 n.20 (explaining that this rule is based on liberal construction of statutes granting the right of appeal in order to avoid forfeiture of that right).

¶22 In reaching this conclusion, we take into account but do not deem dispositive the following features of the order. That the circuit court denominated the December 2020 order as containing "Findings *and Judgment*" does not alter our application of WIS. STAT. § 808.03(1). *See Harder v. Pfitzinger*, 2004 WI 102, ¶13, 274 Wis. 2d 324, 682 N.W.2d 398 ("the label given a document by either the circuit court or the parties is not dispositive of the question of whether the document is a final order or judgment"). The order does not contain a statement asserting that it is final for purposes of appeal. *See Admiral*, 339 Wis. 2d 291, ¶¶28-29 (the absence of a finality statement is not dispositive). Similarly, the circuit court's characterization of the September 2021 order—when denying the Strangfelds' motion for a stay pending appeal—as an "extension" of what the court intended as a final order in December 2020 does not alter our analysis of the earlier order's finality in light WIS. STAT. § 823.23. While the court's intent to enter an order that is final is relevant to our application of § 808.03(1), that intent is solely established through the terms expressed in the pertinent order, which we review de novo. *See Harder*, 274 Wis. 2d 324, ¶¶8, 12.

¶23 The Town argues that the December 2020 order resolved "the merits" of the Town's petition for a receiver and the September 2021 order was "necessary only to enforce the [Town's] rights [as] previously adjudicated." However, this confuses what we explain above is the legal analysis in the

December 2020 order (*i.e.*, what it "decided") with what would have been the final adjudication of the matter by granting the Town its requested relief based on that analysis (*i.e.*, what the order could have, but did not, "dispose of").[8]

### II. Notice

¶24 The Strangfelds argue that the circuit court erred in denying their motion to dismiss the Town's petition based on what they contend was the Town's failure to properly inform the Strangfelds of the conditions prompting the Town to pursue the receivership. *See* WIS. STAT. § 823.23(2)(b)2. (requiring notice to "include" as "information" "[t]he conditions of the residential property that constitute a nuisance and that resulted in the decision to apply for a receiver"). This argument is at times difficult to track. But we understand them to contend that the allegation in the notice of "ongoing noncompliance" with a local ordinance does not describe conditions that could constitute the kind of public nuisance to which § 823.23 could apply. The Town wholly fails to address this issue. Despite this, we reject the Strangfelds' argument because they do not develop a legally supported argument that the appropriate remedy for a

---

[8] The Town references several orders issued by this court before the parties submitted their substantive briefs, but we now briefly explain why none of these orders affect the analysis provided in the text of this opinion below. In October 2021, this court denied the Strangfelds' motion for a stay pending appeal. The Town emphasizes that, in ruling on the motion, this court explained that it "appeared" that the Strangfelds' appeal would be limited to issues raised regarding the September 2021 order and not earlier orders. However, this order further stated that this court "was not conclusively deciding" the scope of our jurisdiction and further based the denial of the stay on an assessment of the merits of the issues raised by the Strangfelds regarding earlier circuit court orders. In a later order, we ruled that at least some aspect of the circuit court's September 2021 order (appointing the receiver) was final, with the result that the Strangfelds could appeal from it as a matter of right. But, this court further clarified that it did not intend to resolve whether the circuit court's December 2020 order "was final for purposes of appeal such that the scope of this appeal is limited to issues that were newly decided by the September 2021 order." We address this court's earlier orders no further.

noncompliance of a notice with § 823.23(2)(b)2. would be dismissal of the Town's petition. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals may disregard inadequately briefed arguments).

¶25    The Strangfelds note that there are some differences between the notice requirements in WIS. STAT. § 823.23(2)(b) and those imposed by pleading standards required for civil actions in WIS. STAT. ch. 801. But at no point do they attempt to explain why the Town's failure to abide by § 823.23(2)(b) would have required the circuit court to reject its application for a receiver. They characterize § 823.23(2)(b)2. as imposing a "heightened" "specificity requirement," but they do not meaningfully address the text of that subpart or any other aspect of § 823.23 as a whole.

¶26    The Strangfelds apparently intend to analogize the failure to describe particular alleged nuisance conditions in the notice to the failure to state a claim in a civil complaint, which results in dismissal of the complaint. *See* WIS. STAT. § 802.06. However, they fail to provide legal authority that could support the analogy. Under the unambiguous terms of WIS. STAT. § 823.23(2)(b), the giving of notice is an act that is distinct from applying to the circuit court for a receiver. Such an application would appear to be the more apt comparison to the commencement of a civil action under ch. 801.

¶27    Moreover, it is notable that there is no dispute that the Town's notice met the requirement that it indicate how the Strangfelds could obtain additional information about the alleged nuisance. *See* WIS. STAT. § 823.23(2)(b)3. (requiring the notice to include contact information "the person or department where additional information can be obtained concerning the nuisance and the action necessary to abate the nuisance"). Thus, assuming without deciding that the

notice gave the Strangfelds little specific information from which they could deduce how the allegation of violating the Town's ordinance related to particular alleged conditions on their property, the notice told them how to actually obtain ("can be obtained") more information. To be sure, the Strangfelds take issue with the way the Town handled their request for more information. But that is not a dispute about the content of the notice itself. The point is that the Strangfelds fail to show how the alleged defect in an otherwise compliant notice required dismissal of the Town's application, given that the notice gave the Strangfelds the opportunity to pursue additional information and then either abate the alleged nuisance or defend the impending receivership action.[9]

### III. Sufficiency Of The Evidence

¶28    The Strangfelds argue that the Town failed to present sufficient evidence to support a determination that a condition on their property constituted the kind of nuisance for which a receiver can be appointed under WIS. STAT. § 823.23 for nuisance abatement. The Strangfelds base this primarily on the contention that the Town's allegation of an ordinance violation amounts to the claim that the Strangfeld property is "untidy or messy," which they argue does not

---

[9] Further, in light of a legal principle stated in case law noted in the text below, we question whether the notice here did not sufficiently identify a condition that constituted a nuisance. *See Town of Delafield v. Sharpley*, 212 Wis. 2d 332, 340 & n.4, 568 N.W.2d 779 (Ct. App. 1997) (town established prima facie existence of nuisance via violation of town ordinance through "blight[ing]" of property with "junk or other unsightly debris"; "repeated violations of an ordinance constitute a public nuisance"). To repeat, the notice stated that the Strangfeld property was in a state of "ongoing noncompliance" with an ordinance of the Town. The ordinance in question "declared" in pertinent part that the "fail[ure] to keep" property in the Town "free of litter, debris, trash, or rubbish" is a "public nuisance." *See* TOWN OF SARATOGA, WIS., ORDINANCES No. 12-2-15A, § 2(D); *see also* TOWN OF SARATOGA, WIS., ORDINANCES No. 9-19-18, § 2(D) (Sept. 19, 2018) (current numbering) (https://dev.saratogawisconsin.org/wp-content/uploads/2019/01/nuisance.doc00804620180920121110.pdf).

describe a public nuisance under applicable common law standards. "A public nuisance is a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community" (though "[t]he number of people affected does not strictly define a public nuisance"). ***Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.***, 2002 WI 80, ¶21, 254 Wis. 2d 77, 646 N.W.2d 777.[10] We reject the Strangfelds' argument because it fails to account for both the circuit court's determination that the Strangfeld property violated the Town's ordinance and the ways in which ordinance violations can constitute public nuisances.

¶29 To repeat, the key substantive conclusion of the circuit court was that the Town carried its burden to establish that the Strangfelds "are in violation" of the Town's ordinance, and that ordinance specifically declares all of the

---

[10] At times, the Strangfelds appear to take the alternative position that receiverships under WIS. STAT. § 823.23 are available for abating only those nuisances identified in WIS. STAT. § 254.595—specifically dealing with properties in violation of municipal building codes or local health board regulations—as opposed to public nuisances more generally. However, § 823.23 unambiguously provides that a municipality "may apply to the circuit court for the appointment of a receiver to abate the nuisance "under this chapter," that is, ch. 823, *in addition to* nuisances under § 254.595. Chapter 823 authorizes a municipality to "maintain an action to recover damages or abate a public nuisance." *See* WIS. STAT. § 823.01. The Strangfelds note that § 823.23(2)(h) requires the court to prioritize appointing, as receivers, those "authorit[ies]" or "corporation[s]" with background in "housing," "redevelopment," and "community development." But we are not persuaded that this necessarily narrows the scope of public nuisances to which the statute applies in a meaningful way. *See also* § 823.23(2)(i) (permitting circuit court "to appoint as a receiver any other person that the court determines to be competent" when "unable" to appoint the types of persons or entities listed in para. (h)). They assert that the "primary purpose" of such persons or entities is to "improve[] housing conditions," but fail to explain how the abatement sought by the Town would not improve the conditions of residential property.

Related to this last point, we reject, as undeveloped and raised too late on appeal (in the reply brief), any argument that the Strangfelds may intend to make that the person actually appointed receiver by the circuit court here was not competent to assume that role. Further, we question whether this argument was preserved for appeal by contemporaneous objection in the circuit court.

following to be public nuisances that "offend the comfort, health, repose or safety of the Town": the "fail[ure] to keep" property in the Town "free of litter, debris, trash, or rubbish." *See* TOWN OF SARATOGA, WIS., ORDINANCES No. 12-2-15A, § 2(D). We do not discern the Strangfelds to challenge the court's application of the ordinance to the evidence presented. Rather, the Strangfelds appear to contend that the alleged ordinance violation was insufficient to establish a public nuisance for WIS. STAT. § 823.23 purposes because some of the conduct restricted by the ordinance does not necessarily constitute a public nuisance under pertinent common law. We now explain why that argument fails.

¶30    The Strangfelds fail to account for the following aspects of the common law regarding the violation of municipal ordinances as a basis for establishing the existence of a public nuisance. To begin, "[t]he police power of a municipality extends to declaring certain acts or conditions to be a public nuisance." *Town of Delafield v. Sharpley*, 212 Wis. 2d 332, 338, 568 N.W.2d 779 (Ct. App. 1997). Moreover, "repeated violations of an ordinance constitute a public nuisance." *Id.* at 340 n.4 (citing *State v. H. Samuels Co., Inc.*, 60 Wis. 2d 631, 639, 211 N.W.2d 417 (1973)).

¶31    In *Sharpley*, this court concluded that a Town was able to establish a prima facie case on summary judgment for the existence of a public nuisance on the Sharpleys' properties. *Id.* at 340. This was based on an affidavit alleging that items were "scattered around" the properties, including "batteries, radiators, miscellaneous machinery and a refrigerator," in addition to the presence of hornets' nests and a school bus apparently being used a residence. *Id.* at 340. With that factual backdrop, this court referred to both the common law standard for public nuisances and the pertinent municipal ordinance. *See id.* Under the former standard, "Property constitutes a public nuisance if it causes substantial

15

'hurt, inconvenience, or damage to the public generally, or such part of the public as necessarily comes in contact with it in the exercise of a public or common right.'" ***Id.*** (quoting ***State v. Quality Egg Farm, Inc.***, 104 Wis. 2d 506, 517-18, 311 N.W.2d 650 (1981)). We summarized the ordinance defining public nuisances as being similar to this standard through its classification of the following as public nuisances: "premises which are blighted due to the accumulation of junk or other unsightly debris and other items which depreciate property values and jeopardize or are detrimental to the health, safety, morals or welfare of the people of the Town." ***Id.***

¶32 Neither party cites ***Sharpley***, and the evidence and the ordinance at issue in ***Sharpley*** vary in some ways from the evidence and ordinance at issue here. Nonetheless, the Strangfelds' conclusory assertions do not begin to address the principles in ***Sharpley***, which are necessarily implicated by the circuit court's key conclusion in the December 2020 order. Nor do the Strangfelds attempt to show how those principles could not apply here. They do not dispute that the circuit court had a sufficient record to find that they were in violation of the Town's ordinance. They merely gesture at the concept that this was an insufficient basis to establish a public nuisance that merited appointment of a receiver, at best making selective reference to the evidence presented to the circuit court. This is not sufficient, given the fact that the record included testimony regarding photographs of the property that depicted piles of various objects. The Strangfelds do not seriously dispute that photographs appear to show piles that could fit within one or more of the definitions of "Litter," "Trash," or "Rubbish" as those terms are used in the ordinance.[11] Similarly, the Strangfelds did not

---

[11] The ordinance provides in pertinent part:

(continued)

16

dispute at trial that these conditions lasted over a sustained period of time and that the Town had in earlier years issued citations to the Strangfelds for alleged violations of the ordinance that is a predecessor to the ordinance at issue in this case.

¶33    In scattered references throughout their briefing, the Strangfelds take issue with the circuit court defining the scope of the nuisance on their property, in part, according to what Town representatives "feel constitutes a nuisance."[12] However, the closest the Strangfelds come to developing an argument that this statement by the court created grounds for reversal is to make the conclusory assertion that the court's approach was a "far cry from the public nuisance standard of WIS. STAT. § 823.23." The Strangfelds do not attempt to analyze the court's reference in the proper context of the court's other rulings. Nor do they address the evidence presented to the court concerning the scope of the alleged nuisances on the property or concerning the proper procedure for defining the

> "Litter" as used in this ordinance includes, but is not limited to, trash and wastepaper lying scattered about; and an untidy accumulation of objects of any kind.
>
> "Trash" as used in this ordinance includes, but is not limited to, something or object(s) worth little or nothing or something or object(s) in a crumbled, broken or inoperable condition.
>
> "Rubbish" as used in this ordinance includes, but is not limited to, waste materials and refuse of every character and kind collected and/or accumulated.

*See* TOWN OF SARATOGA, WIS., ORDINANCES No. 12-2-15A, § 2(D) (bulleting omitted).

[12] We do not consider additional purported statements of the circuit court referenced by the Strangfelds, which were allegedly made during the hearing at which the court decided to appoint a receiver, because there is no accompanying citation to the record and it appears that the referenced transcript is not included in the record. "We are limited to matters in the record, and will not consider any materials in an appendix that are not in the record." *Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256 (citation omitted).

scope of a nuisance. Accordingly, we reject their argument on this point as undeveloped. *See **Pettit***, 171 Wis. 2d at 646-47.

### IV. Agricultural Use

¶34 The Strangfelds argue that the circuit court failed to properly apply WIS. STAT. § 823.08 in light of evidence presented through testimony at trial regarding the Strangfelds' agricultural practices on their land. Under § 823.08, activities meeting the definitions of "agricultural practice" or "agricultural use" "may not be found to be a nuisance" if certain conditions are met, including that the agricultural use or practice "does not present a substantial threat to public health or safety." Sec. 823.08(2)-(3). We reject this argument as undeveloped. The Strangfelds fail to come to grips with the fact that the December 2020 order *excluded* "anything related to agricultural use" from its definition of the scope of the nuisances to be abated on their property. Thus, the Strangfelds fail to take into account that the court explicitly gave them the benefit of § 823.08(3)(a)'s protection—in effect determining that any condition related to an agricultural use did not constitute a nuisance.

¶35 The Strangfelds may mean to argue that the circuit court clearly erred in finding that less than *all* of the conditions depicted in photographic evidence presented by the Town were "related to agricultural use." However, the Strangfelds fail to support such an argument. They merely assert without citation to the record that Patricia Strangfeld's testimony established that "almost all" of the Town's photographs depicted items related to agricultural uses and make selective reference to some of photographs presented at trial. But it is clear from the record that, while the circuit court credited some aspects of her testimony, it did not do so to the degree urged by the Strangfelds on appeal. *See **Xiong v.***

***Vang***, 2017 WI App 73, ¶32, 378 Wis. 2d 636, 904 N.W.2d 814 ("'When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to their testimony.'" (quoted source and alteration brackets omitted)). The Strangfelds do not begin to demonstrate that the court could not reasonably interpret her testimony as not explaining or only partially explaining some of the conditions reflected in the photographic evidence presented by the Town.[13]

¶36 The Strangfelds briefly request that they be awarded their "litigation expenses" for defending the agricultural use of their property, but the argument is undeveloped. *See* WIS. STAT. § 823.08(4)(b) (the circuit court "shall award litigation expenses to the defendant in any action in which an agricultural use or agricultural practice is alleged to be a nuisance if the agricultural use or agricultural practice is not found to be a nuisance"). The Strangfelds' failure to address the circuit court's rulings regarding the scope of the nuisance would leave it to this court to develop their argument in favor of awarding litigation expenses. *See **Industrial Risk Ins. v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (court of appeals does not abandon its neutrality to develop arguments). At a minimum, any argument that the Strangfelds intend

---

[13] This same failure to show clear error in fact finding by the circuit court undermines the Strangfelds' efforts to invoke the doctrines of vested rights and nonconforming uses. The Strangfelds contend that their agricultural use of their property is "vested," by which they apparently mean their agricultural activities are legally protected nonconforming uses to the extent that they conflict with applicable zoning restrictions. However, the Strangfelds fail to show that the court was required to find that whatever vested agricultural use rights they possessed extended to *all* of the conditions reflected in the Town's photographs. Moreover, the vested nature of their agricultural activities has no bearing on whether conditions on their property constitute public nuisances. *See **Sharpley***, 212 Wis. 2d at 338 ("'neither the legitimacy of the business nor the length of time it has been in existence is controlling in determining whether a public nuisance exists because a public nuisance can always be abated'" (quoted source omitted)).

to make along these lines would need to apply § 823.08(4) to the circuit court's specific conclusions. They fail to do this.

## CONCLUSION

¶37 For all of these reasons, we affirm the circuit court's order appointing a receiver.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.